JEWEL TEA COMPANY, Appellant, vs. WEBER, Respondent.

*January 12—February 9, 1915.*

*Master and servant: Statement of account: Shortage: Evidence: Bills and notes: Duress.*

1. Defendant, who had been employed by plaintiff as a salesman or manager, assisted plaintiff's auditor in making up a statement of goods on hand and business done, which showed a shortage for which he was indebted to plaintiff. He signed, of his own free will, a certificate that such statement was correct, and afterwards gave his note for the amount of the shortage. In an action on such note it is *held* that it was not sufficient to defeat a recovery for defendant to testify that he did not owe plaintiff anything, that the statement must have been wrong because he knew he kept his accounts correctly, and to give an explanation as to how the shortage might have occurred, where he could point out no inaccuracy in the statement and did not know that the shortage in fact occurred in the way suggested.
2. The entire controversy having been tried in such action on the note, and it appearing that the amount for which it was given was in fact due, it is immaterial whether or not the note was given under duress.

APPEAL from a judgment of the municipal court of Rock county: HARRY MAXFIELD, Judge. *Reversed.*

Action to recover on promissory note. In 1911 and 1912 the plaintiff was engaged in the business of selling teas, coffees, and other wares on the premium plan, and carried on its business by the use of a horse and wagon driven over six routes about Janesville and six routes about Beloit. Each route was designed to take one day's time and was traveled once in two weeks. On October 5, 1911, the plaintiff entered into a contract with the defendant, under which he was to sell, deliver, and take orders at a salary of $15 per week and a commission of ten per cent. additional on weekly sales in excess of $150. Among other things, the contract provided that negligence, inattention to duties, shortage in accounts, drunkenness, gambling, mismanagement, and failure to obey

plaintiff's rules would constitute just cause for defendant's discharge without previous notice; otherwise thirty days' notice would be required by either party to terminate the agreement. On February 10, 1912, a representative of the plaintiff made an inventory of the merchandise in defendant's possession and an audit of defendant's accounts, as a result of which the plaintiff claimed a shortage of $71.70, and thereafter a settlement was had between the representative of the plaintiff and the defendant, the defendant turning over a salary check for $25.90, which, together with an allowance of $2.50 commission and the note in suit for $43.30, made up the shortage. The note was not paid when due, and plaintiff brought this action to recover thereon. The defendant denied liability on the note on the ground that there was no consideration therefor and that the note was given under duress, he alleging that he was threatened with criminal prosecution unless the note was given and the shortage made good. Defendant also counterclaimed for thirty days' prospective salary by reason of his unlawful discharge, and for salary earned up to the time of his discharge, which was alleged to be due and unpaid. The case was begun in justice's court, where judgment was rendered for plaintiff. An appeal was taken to the municipal court, where judgment was entered dismissing plaintiff's complaint and rendering judgment for defendant on his counterclaim, and from such judgment plaintiff appeals to this court.

*M. P. Richardson,* for the appellant.

*Edward H. Ryan,* for the respondent.

Barnes, J. The court entertains very serious doubt about the sufficiency of the evidence to support the finding that the note sued upon was given under duress. It is unnecessary to pass upon the question, however.

Defendant took charge of plaintiff's business about October 8, 1911. Certain goods and property were placed in his

hands, of which an inventory was taken. Other goods were shipped from time to time as needed. Some were stored in Janesville and some at Beloit. It was defendant's duty to remit such cash as he collected on sales and to report sales on credit. He was checked up by an auditor of the plaintiff from time to time, once on October 31, again on December 30, and finally on February 10, 1912. In these audits, after the first one, defendant was charged with the amount of goods on hand at the date of the previous audit, and the amount forwarded in the interim at the prices at which they were to be sold, and he was credited with the goods on hand when the audit was made, the cash remitted, and the accounts outstanding. The audits were signed by the auditor and the defendant. In the one made December 30th the defendant's credits overran his debits by forty-five cents. The final audit, dated February 10th, contained the following certificate signed by the auditor and the defendant: "We certify the above to be a true and correct statement of goods and premiums on hand and business done at this branch since the last check up." This audit shows that defendant was short $71.70. There appears to be no controversy as to the amount of goods on hand when the audit of December 30th was made, nor as to the goods subsequently shipped, nor as to the cash remitted, nor the amount of outstanding accounts. The goods on hand were inventoried by both parties. We do not find any claim on the part of the defendant that he was subjected to threats or that he did not act of his free will in certifying to the correctness of the audit. The evidence relating to duress pertains to what took place when the auditor was endeavoring to make defendant settle for the agreed amount of the shortage. Defendant actively participated in making up the final statement, observing the account as made up and the prices placed upon the goods. He objected to charges amounting to $7, and his objection was allowed. Westphal, the auditor, testifies to the correctness of the statement, and his evidence is corrob-

orated by that of Bristol, the defendant's successor, who was present when the statement was made up.

The defendant insisted that he had accounted for everything that came into his hands and that there was some mistake in the account somewhere, but just wherein it was wrong he was unable to state; so he signed the certificate quoted above. He took much the same position on the trial, and offered two possible theories on which it might be wrong. He said that he was not familiar with the prices of some premium goods in his possession and did not know whether the auditor made correct charges against him on account of such goods. He further said that the company sent a man to help him out, and that this employee had access to the goods stored at Beloit, and that when he went to where they were after the helper left, the box in which the goods were stored was unlocked and the goods were scattered around; so that some of them might have been stolen, but he didn't know whether they were or not. The amount of goods stored at Beloit appears to have been small, less than $300 worth. It is not probable that one quarter or more of them could have been stolen without defendant knowing that a theft had been committed.

We do not see how it makes much difference in this case whether the relation between the plaintiff and the defendant was that of principal and agent or of master and servant, or that defendant should be treated as a bailee for hire as to goods left in his charge rather than as a purchaser. There is not a single item of charge made against the defendant which he disputes. He simply relies on the general statement that the account must be wrong because he knows he kept his accounts correctly. He puts forward some explanation as to how the shortage might have occurred, but does not know that it did occur in such manner. Defendant's testimony neither contradicted nor put in issue any fact testified to in behalf of the plaintiff. It simply attempts to take issue with the conclusion which logically follows from such facts. We think it

was incumbent on the defendant to show wherein the account which he certified to be correct was in fact erroneous in any view of the case. Where a debit and credit account is presented to a party which shows a balance due from him, it is not sufficient for the debtor to say that he can point out no inaccuracy in the account but he knows that he does not owe anything. This is a defense which it would be impossible for the creditor to meet. Under the circumstances of this case, it was incumbent on the defendant to show wherein the account presented was erroneous, and this he has not done.

If the amount for which the note was given was in fact due, it makes no difference whether duress was used to obtain the note or not. The entire controversy had been tried. If plaintiff might not recover on the note, it was entitled to judgment for the amount for which the note was given. If the indebtedness existed, the plaintiff was justified under its contract in discharging defendant when it did, and no recovery should have been allowed on defendant's counterclaim.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded with directions to enter judgment for the plaintiff for $43.30, with interest at six per cent. from February 10, 1912, with costs, defendant to take nothing on his counterclaim.